UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERRANCE MALLETT,

                    Petitioner,
                                        CASE NO. 04-CV-72360-DT
v.                                      HONORABLE  DENISE PAGE HOOD

JAN TROMBLEY,

                    Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Terrance Mallett has filed a petition for the writ of habeas corpus under 28

U.S.C. § 2254.  The petition attacks Petitioner's state convictions for drug and weapon offenses.

Respondent urges the Court to dismiss the habeas petition.  The Court has concluded that

Petitioner's claims do not warrant the writ of habeas corpus.  Accordingly, the petition will be

denied.

## I.  Background

On March 23, 2000, a circuit court jury in Wayne County, Michigan found Petitioner

guilty of possession with intent to deliver 50 to 224 grams of heroin, MICH. COMP. LAWS §

333.7401(2)(a)(iii), possession with intent to deliver less than 50 grams of cocaine, MICH. COMP.

LAWS § 333.7401(2)(a)(iv), and possession of a firearm during the commission of a felony,

MICH. COMP. LAWS § 750.227b.  The convictions arose from the execution of a search warrant at

3750 Buena Vista Street in Detroit, Michigan on July 4, 1999.  As explained by the trial court,

> [Petitioner] was arrested during a raid at a house where drugs, guns and money
> were discovered.  He testified that he did not live at 3750 Buena Vista and was on
> the premises only to feed the homeowner's dogs and clean the dog-yard as he did

every Sunday.  He testified that some months earlier he allowed his female cousin who lived at 3750 Buena Vista to use his name to secure a utility account because her own credit with the utility company was bad.  The prosecutor relied on a utility bill found at the residence in the defendant's name to show that the defendant resided at or had dominion and control over the house at 3750 Buena Vista.

The presence of the defendant at the house at the time of the raid, the single key to the front door and the utility bill in his name for 3750 Buena Vista were the only direct evidence of a nexus to the contraband that the prosecutor presented at trial to support his theory of constructive possession.  Four pieces of mail addressed to other people were admitted into evidence by the defense to show that other people had access to the house.  (Trial transcript, Vol. II, p. 43). No fingerprint evidence on the guns, drugs or money was presented showing the defendant had been in close proximity to the items seized.  The defendant was not tested for drug residue on his person, which would be likely if the defendant was actually handling the drugs to sell.  There was  no evidence that the defendant had personal belongings at the house, or that the defendant had been anywhere in the house but the kitchen and dining room area.[1]

The only additional evidence that the prosecutor used to link the defendant to the contraband at 3750 Buena Vista was surveillance evidence provided by an assisting police officer.  Officer Conrad Gaines testified that he observed an individual he believed to be the defendant on July 3, 1999, drive up to the residence at 3750 Buena Vista in a 1999 Corvette and enter the house.[2]  The officer then observed two separate instances where a vehicle drove up and parked in front of the house.  The person who looked like the defendant walked from the house to the vehicle and escorted the occupant of the vehicle into the house for approximately ten minutes, then the visitor would exit the house and drive away in the vehicle.  The officer testified that his behavior was consistent with narcotics transactions.

*People v. Mallet* (sic), No. 99-007021-01 (Wayne County Cir. Ct. Mar. 21, 2001), at 17-19.

---

[1]  Officer Gaines testified that as the police exited the raid van they saw the defendant look out the kitchen window at them as they ran toward the front door to commence the raid. When they entered the residence the defendant was laying face down on the floor of the dining room area near the kitchen window.  (Trial transcript, Vol. I p. 134-5).

[2]  The defendant offered contradicting testimony that he was not at the Buena Vista house on July 3, 1999, and that he did not drive the 1999 Corvette because he did not have a license and did not know how to drive a stick-shift vehicle.  The Corvette was a manual transmission vehicle with a stick-shift.  (Trial transcript, Vol II, p. 46, 62).

(footnotes in original).  The trial court sentenced Petitioner as a habitual offender to two years in prison for the felony firearm conviction, followed by concurrent terms of lifetime probation for the cocaine conviction and ten to twenty years in prison for the heroin conviction.

Petitioner filed a motion for new trial on the grounds of prosecutorial misconduct and ineffective assistance of counsel.  The trial court held an evidentiary hearing and then granted the motion.  The prosecutor, however, appealed the trial court's ruling.  The Michigan Court of Appeals reversed the trial court's decision and remanded the case for reinstatement of Petitioner's convictions.  *See People v. Mallett*, No. 234406 (Mich. Ct. App. Aug. 27, 2002) (unpublished *per curiam* opinion).  Petitioner appealed to the Michigan Supreme Court, which denied leave to appeal on March 31, 2003, because it was not persuaded to review the issues. *See People v. Mallett*, No. 122450 (Mich. Sup. Ct. Mar. 31, 2003).

Petitioner filed his habeas corpus petition through counsel on June 25, 2004.  The grounds for relief are prosecutorial misconduct and ineffective assistance of trial counsel.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

3

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III.  Discussion

### A.  The Prosecutor's Conduct

Petitioner alleges that the prosecutor engaged in intentional misconduct, which permeated the entire trial. Respondent contends that this claim is procedurally defaulted because Petitioner failed to object to the alleged misconduct during trial.

### 1.  The Doctrine of Procedural Default

A procedural default is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997).

> When a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

4

*Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000).  A constitutional claim is procedurally defaulted and barred from habeas review  when:  (1) there is a state procedural rule applicable to the petitioner's claim; (2) the petitioner failed to comply with that rule; (3) the state courts actually enforced the state procedural sanction; and (4) the procedural rule is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "Failure to comply with well-established and normally enforced procedural rules usually constitutes 'adequate and independent' state grounds for foreclosing review."  *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

Michigan's contemporaneous-objection rule requires defendants in criminal cases to make an objection in the trial court to preserve an issue for appellate review.  *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999).  "As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances."  *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).

Petitioner violated this rule by not objecting to the prosecutor's alleged misconduct.  The Michigan Court of Appeals relied on Petitioner's failure to object, saying:

> "[D]efendant failed to object in a timely and specific manner to the challenged statements; therefore, we review the allegations of prosecutorial misconduct for plain error.  *People v. Schultz*, 246 Mich. App. 695, 709; 635 NW2d 491 (2001); see also *People v. Carines*, 460 Mich. 750, 766-67; 597 N.W.2d 130 (1999).  In order to establish relief, defendant must demonstrate the existence of a clear or obvious error that likely affected the outcome of the trial.  *Schultz*, *supra* at 709.

*Mallett*, Mich. Ct. No. 234406, at 5.

Petitioner's failure to comply with the State's contemporaneous-objection rule was an adequate and independent state ground for foreclosing review because the rule was in effect and enforced before Petitioner's trial.  Although the court of appeals briefly reviewed Petitioner's prosecutorial-misconduct claim on the merits, this Court is not precluded from finding that Petitioner procedurally defaulted the claim.  As the Supreme Court explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935).  Thus, by applying this doctrine to habeas cases, [*Wainwright v.*] *Sykes* [433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar as a separate basis for decision.  In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id*. at 264 n.10 (emphasis in original).

To summarize, Petitioner violated a state procedural rule, the state court relied on Petitioner's procedural error, and the state court's ruling was an adequate and independent state ground for foreclosing review.  Therefore, this Court may consider the substantive merits of Petitioner's claim only if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## 2.  Ineffective Assistance as "-Cause"

Petitioner alleges that his trial attorney should have objected to the prosecutor's conduct.

Constitutionally ineffective assistance of counsel is "cause" for a procedural default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004), but to establish ineffective assistance, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]he Constitution does not insure that defendant counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). The Court will proceed to review Petitioner's prosecutorial-misconduct claim in light of *Strickland*.

### 3. Eliciting Prejudicial Information

Petitioner alleges that the prosecutor asked questions which he knew would elicit prejudicial and inadmissible information.

### a. Employment

The very first question that the prosecutor asked Petitioner on cross-examination was, "What do you do for a living?" Petitioner explained that he watched his children, did lawn work, and performed other odd jobs. Petitioner testified that he was not paid for watching his children and that he did lawn work only on weekends. The prosecutor then asked Petitioner whether he was driving a 1999 Corvette convertible on the day of the raid. Petitioner denied driving the car, and he claimed that the car belonged to his cousin's boyfriend. (Tr. Mar. 23, 2000, at 45-47.)

The prosecutor's questions were an attempt to show that Petitioner was able to afford an expensive car despite not having a steady job. The implication was that Petitioner derived income from selling narcotics. The questions were not egregious, and Petitioner handled them

fairly well.  Therefore, defense counsel was not ineffective for failing to object to the question about Petitioner's employment.

### b. Whether Petitioner had faced a Similar Situation Previously

The prosecutor also asked Petitioner how he knew what the police were going to do when he looked out the window of the house on Buena Vista and saw the police approaching the house.  Petitioner responded that, if the police were coming in, there must be a reason for it.  The prosecutor then said, "Well you knew because you had faced that kind of situation before, hadn't you."  Petitioner answered, "Right.  I [was] arrested like 10 years . . . before for trying to be a drug dealer so . . . [t]hat's how I kn[e]w."  (*Id*. at 60-61.)

Petitioner claims that the prosecutor's question was improper because the prosecutor knew exactly the kind of answer he would elicit and because neither of Petitioner's prior convictions for carrying a concealed weapon and delivery of drugs was admissible.  The trial court concluded in its order granting a new trial that the prosecutor's question was improper because the prosecutor knew Petitioner's criminal record was inadmissible as substantive evidence and because the prosecutor stated in his closing argument that Petitioner previously had been the subject of a police raid.  The Michigan Court of Appeals, however, opined that Petitioner's response was voluntary and unresponsive and that it was unlikely to affect the outcome of the case, given the additional evidence introduced against him.

The Court agrees that the prosecutor's question and Petitioner's response likely did not affect the outcome of the case.  Petitioner later said that he knew what to expect from the police as a result of watching television.  In addition, he never admitted being convicted of a prior offense; he only admitted a prior arrest.  The Court therefore concludes that, even if defense

counsel's failure to object amounted to deficient performance, the deficiency did not prejudice the defense.

### 4.  Vouching and Bolstering

Petitioner alleges next that the prosecutor engaged in vouching and improper bolstering by arguing that certain police officers testified truthfully.  The prosecutor informed the jurors during *voir dire* and during opening statements that two police officers (Delford Fort and Derrick Carpenay) would not be testifying because they were being prosecuted by the federal Government for taking money from a place where they had executed a search warrant.  The prosecutor stated that the police cleaned their own house by reporting the two officers and arranging for their prosecution.  (Tr. Mar. 22, 1999, at 55-56 and 112-15.)  According to Petitioner, the implication was that the officers who did testify were truthful.

During closing arguments, the prosecutor asked theoretically why the police officers who testified would risk their careers and reputations by committing perjury.  He also asked why the officers did not tell a really great lie by testifying that they observed an exchange of drugs for money or that they found a gun or drugs on Petitioner.  The prosecutor answered his own questions by stating that the officers' testimony was the truth and an accurate description of what happened.  (Tr. Mar. 23, 1999, at 82-84.)

The trial court determined in its opinion on Petitioner's motion for a new trial that the prosecutor improperly vouched for the veracity of witnesses.  The Michigan Court of Appeals concluded otherwise, stating that the prosecutor was "simply arguing that a commonsense view of the evidence led to the conclusion that the officers' testimony was truthful."  *Mallett*, Mich. Ct. App. No. 234406, at 5-6.

9

The prosecutor's blatant comment that "the testimony of the police officers was the truth" (Tr. Mar. 23, 1999, at 84) constituted misconduct. *See United States v. Hurst*, 951 F.2d 1490, 1502 (6th Cir. 1991) (explaining that a prosecutor may not "express a personal opinion or belief regarding the truth or falsity of any testimony or evidence") (citing *United States v. Young*, 470 U.S. 1, 8 (1985)). However, the evidence against Petitioner was substantial, and the trial court instructed the jurors that the attorneys' statements, questions, and arguments were not evidence. The trial court also instructed the jurors that the police officers' testimony must be judged by the same standards used to evaluate the testimony of other witnesses. (Tr. Mar. 23, 2000, at 112 and 116.)

The Court does not believe that the prosecutor's remarks had "a bearing on the outcome of the trial in light of the strength of the competent proof of guilt." *Pritchett v. Pitcher*, 117 F.3d 959, 965 (6th Cir. 1997) (citing *Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir.1982)). Therefore, defense counsel's failure to object did not prejudice the defense.

### 5. Misstating the Facts

Petitioner alleges that the prosecutor misstated the facts and argued facts not in evidence when he (1) said that he could not call Officers Delford Fort and Derrick Carpenay as witnesses because they would plead the Fifth Amendment, (2) claimed that Officers Fort and Carpenay were charged with stealing only money from the houses, (3) implied that Fort's and Carpenay's criminal activity happened after the search in Petitioner's case, (4) led the jurors to believe that Petitioner's case was untainted because Officers Fort and Carpenay were arrested after the events in this case, and (5) claimed that the other officers in the crew cleansed their own house by turning in Fort and Carpenay. The trial court stated in its opinion granting a new trial that the

10

prosecutor made misstatements of fact and that his intent was to mislead the jury, place the police officers in a false light, and add to the officers' credibility. The Michigan Court of Appeals opined that the alleged error did not affect the outcome of the case and that the prosecutor's statements about Fort and Carpenay and the two officers' credibility were collateral issues at trial.

### a. Comments about Fort and Carpenay pleading the Fifth Amendment

Petitioner contends that Delford Fort probably would have asserted his right to remain silent, but Carpenay had pleaded guilty in federal court and was required to provide truthful information to law enforcement agencies. Petitioner claims that the prosecutor's statement about the two officers pleading the Fifth Amendment was prejudicial because Carpenay might have testified that Officer Fort stole drugs and that he (Carpenay) had observed clothing and mail, which belonged to people other than Petitioner. This testimony, alleges Petitioner, would have supported his defense that he did not control the premises, and it would have supported the theory that Delford Fort "salted" the Buena Vista house with drugs.

The problem with Petitioner's argument is that it is based on speculation about what Officer Carpenay would have said on the stand. Moreover, the jury was made aware that other people besides Petitioner received mail at the house on Buena Vista Street. Lieutenant Arthur McNamara even conceded that Officers Fort and Carpenay might have been able to determine whether people besides Petitioner were living in the house. (Tr. Mar. 23, 2002, at 21-22.) Even if Officer Carpenay had testified that Officer Fort stole drugs, there was no evidence to support the theory that either Fort or Carpenay planted drugs in the house on Buena Vista Street. Petitioner's attorney testified at the evidentiary hearing that Petitioner never alleged that the

drugs were stolen or planted.  (Tr. Nov. 21, 2000, at 22-23.)  Therefore, defense counsel's failure to object to the prosecutor's comments about Officers Fort and Carpenay did not prejudice the defense.

### b.  Comments about Fort and Carpenay's Illegal Conduct and Arrest

Petitioner claims that the prosecutor misstated the facts when he told the jury that Officers Fort and Carpenay were charged only with stealing money.  Petitioner notes that the two officers also were charged with stealing drugs.  He claims that this information supports the theory that the officers had a cache of drugs to plant in houses such as the one raided in this case.

According to Petitioner, the prosecutor also incorrectly implied that Officers Fort and Carpenay's illegal conduct occurred only after the events in this case.  Petitioner alleges that Fort and Carpenay were engaged in illegal conduct for at least two years prior to being indicted, and, if the jurors had been so informed, they might have doubted whether drugs were present at 3750 Buena Vista Street before the officers arrived.

It is undisputed that Officers Fort and Carpenay were arrested after the incident in this case.  And although the prosecutor said that Officers Fort and Carpenay were indicted for stealing money from a dope house, he did not say that the officers stole *only* money or that their illegal conduct was limited to only one instance.  (Tr. Mar. 22, 2000, at 54-55 and 112-13.)  More importantly, the federal indictment of the officers was largely irrelevant to Petitioner's case.  Petitioner never testified that drugs were planted in the house.  His defense was that the drugs were not his property.  Therefore, defense counsel was not ineffective for failing to object to the prosecutor's comments.

12

### c. Cleaning House

Petitioner contends that the prosecutor falsely informed the jury that other officers in the crew that raided the house on Buena Vista Street "cleaned their own house" by turning in Officers Fort and Carpenay and making sure that the federal prosecution occurred. (*Id*. at 55-56.) Petitioner claims that the investigation was instigated by citizens who complained of being cheated by Fort and Carpenay. The trial court agreed, stating in its opinion granting a new trial that the federal prosecutor, not the testifying officers, cleaned house.

It is true that citizens' complaints about missing property alerted the police to Officers Fort and Carpenay's suspicious conduct. However, Lieutenant Arthur McNamara testified that he investigated the citizens' complaints and set up a fake raid during which he monitored Officers Fort and Carpenay. He later determined that items were missing, and he reported his findings to the FBI. (*Id*. at 211-13.) Lieutenant McNamara was part of the task force that led to the federal prosecution of Fort and Carpenay. Thus, the prosecutor did not misstate the facts when he claimed that the police cleaned their own house.

### d. Conclusion on the Prosecutor's Alleged Misstatements

A prosecutor may not misrepresent facts in evidence, nor assert facts that were never admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974), and *Berger v. United States*, 295 U.S. 78, 84 (1935)). The disputed comments in this case either were truthful or harmless. Therefore, defense counsel was not ineffective for failing to object to the comments.

### 6. Innuendo and Speculation

### a. Stipulating about Petitioner's Tardiness

13

Petitioner was late getting back from lunch on the first day of trial, and the prosecutor said in his opening statement, which followed the lunch break, that he was willing to stipulate that Petitioner was absent for an innocent reason.  Petitioner subsequently arrived in the courtroom and defense counsel informed the jury that Petitioner was late due to a flat tire.  (Tr. Mar. 22, 1999, at 106-07 and 124.)

The prosecutor did not stipulate thereafter that Petitioner's tardiness was innocent, and Petitioner now claims that the prosecutor used innuendo to suggest that Petitioner was guilty. Petitioner contends that the prosecutor's failure to stipulate about his absence permitted the jury to speculate about non-innocent reasons for Petitioner's tardiness.  Petitioner contends that the prosecutor used innuendo to suggest that Petitioner was guilty.

The prosecutor stipulated in advance that Petitioner's tardiness was innocent.  Thus, there was no need for defense counsel to object to the lack of a formal stipulation following Petitioner's arrival in court.  The prosecutor had already given Petitioner the benefit of the doubt. He even urged the jurors not to speculate about Petitioner's absence.

### b.  Comment about the Quantity of Drugs Found

The prosecutor stated in his opening remarks that the quantity of drugs seized was so great that it could not have been for Petitioner's personal use.  (*Id*. at 119.) According to Petitioner, the comment implied that Petitioner was a heroin addict.

The prosecutor was merely arguing that Petitioner possessed the drugs with intent to deliver them and not for personal use.  Intent to deliver drugs was an element of the charged offenses, and there was no suggestion at trial that Petitioner was addicted to, or even used, illegal drugs.  Furthermore, the remark was supported by a police officer's subsequent testimony that

14

the quantity and packaging of the drugs was indicative of distribution of drugs, not personal use. (*Id*. at 189-91.) The prosecutor's remark was proper, and there was no basis for objecting to it.

### 7. Distorting the Burden of Proof

Petitioner's final allegation about the prosecutor is that he distorted the burden of proof by saying, "The common sense conclusion is [that] the defendant is guilty as charged." (Tr. Mar. 23, 1999, at 109.) Petitioner notes that the burden of proof in a criminal case is "beyond a reasonable doubt," not common sense.

The prosecutor never said that the burden of proof was common sense. He merely urged the jurors to use their common sense, to draw conclusions from the facts as alleged by witnesses, and not to believe Petitioner's argument that someone else left large quantities of dope and money unattended in the Buena Vista house. The argument was proper.

### 8. Conclusion on the Prosecutorial-Misconduct Claim

The Court concludes for all the foregoing reasons that defense counsel's failure to object to the prosecutor's comments either did not amount to deficient performance or did not prejudice the defense. Therefore, defense counsel's omissions did not constitute ineffective assistance, and ineffective assistance of counsel cannot be deemed "cause" for Petitioner's procedural default of failing to object to the prosecutor's comments.

The Court need not determine whether Petitioner has established prejudice from the alleged constitutional errors, because he has not shown "cause" for his procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003). The remaining question is whether, in the absence of "cause and prejudice," Petitioner can demonstrate that the alleged constitutional errors probably resulted in the conviction of one who

15

is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004);

*Carrier*, 477 U.S. at 496.  "To establish the requisite probability, the petitioner must show that it

is more likely than not that no reasonable juror would have convicted him in the light of . . . new

evidence."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner has not submitted any new evidence from which a reasonable juror could

conclude that he is actually innocent and not guilty of the offenses for which he was convicted.

Therefore, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate

the substantive merits of Petitioner's procedurally defaulted prosecutorial-misconduct claim.

### B.  Trial Counsel

Petitioner's second and final habeas claim alleges ineffective assistance of trial counsel.

The trial court stated on review of this claim that Petitioner's

> trial attorney failed to perform at an objective standard of reasonableness when
> (1) he failed to make substantial challenges to the search warrant affidavit; (2) he
> failed to investigate the allegations against the defendant to prepare a defense; (3)
> he failed to ask the court to exclude evidence of the defendant's prior criminal
> history from the trial and then later failed to act to prevent it from further use in
> the prosecutor's substantive case, and (4) he failed to object to the use of
> improper drug profile evidence as substantive evidence, or request limiting
> instructions to the jury on the appropriate use of drug profile evidence.  The trial
> attorney had a duty to protect the due process rights of the defendant he
> represented to ensure that the defendant has the assistance necessary to justify a
> reliance on the outcome of the trial.  The defendant was severely prejudiced by
> his attorney's failure [to] act to prevent inadmissible or highly prejudicial
> evidence being used as substantive evidence of guilt at the defendant's trial.

*Mallett*, Wayne County Cir. Ct. No. 99-007021-01 at 22-23.  The Michigan Court of Appeals

subsequently opined that "[t]he trial court's lengthy litany of counsel's alleged errors with regard

to the investigation and preparation of the case fails to support a finding of ineffective

assistance."  *Mallett*, Mich. Ct. App. No. 234406, at 2.

16

**1. Clearly Established Federal Law on Constitutionally Defective Counsel**

To prevail on his claim, Petitioner must show that the state appellate court's conclusion was contrary to, or an unreasonable application of, *Strickland*.  As previously explained, *Strickland* requires showing that defense counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  A presumption of prejudice "is reserved for cases in which counsel fails meaningfully to oppose the prosecution's case."  *Florida v. Nixon*, 543 U.S. 175, 179 (2004) (citing *United States v. Conic*, 466 U.S. 648, 659 (1984)).

**2. The Alleged Shortcomings**

**a. Counsel's Challenge to the Search Warrant**

Petitioner's first allegation about his trial attorney is that the attorney failed to raise a

17

substantial and meritorious Fourth Amendment challenge to the search warrant obtained for

3750 Buena Vista Street.  More specifically, Petitioner alleges that his attorney conceded the

issue of standing and failed to show that the arrest warrant (1) was made in reckless disregard for

the truth, (2) had no independent corroboration, and (3) did not establish a substantial basis for

believing that controlled substances would be found at the dwelling.

The trial court stated on review of Petitioner's motion for new trial, that Petitioner's

attorney did not perform reasonably when he failed to make substantial challenges to the search

warrant affidavit.  The Michigan Court of Appeals disagreed, stating that Petitioner did not show

that the affiant inserted false material in the affidavit and that the false material was necessary to

the finding of probable cause.

> To prevail on this claim, Petitioner
>
> must show both that counsel's representation fell below an objective standard of
> reasonableness, *Strickland*, 466 U.S. at 688, and that there exists a reasonable
> probability that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different.  *Id.*, at 694.  Where defense counsel's
> failure to litigate a Fourth Amendment claim competently is the principal
> allegation of ineffectiveness, the defendant must also prove that his Fourth
> Amendment claim is meritorious and that there is a reasonable probability that the
> verdict would have been different absent the excludable evidence in order to
> demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

### i. Clearly Established Federal Law on Affidavits Supporting Warrants

The Fourth Amendment to the United States Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be
> seized.

18

U.S. CONST. amend IV.  A defendant in a criminal case possesses a constitutional right to

challenge the truthfulness of factual statements made in an affidavit supporting a warrant.

*Franks v. Delaware,* 438 U.S. 154, 155-56 (1978).

> [A] warrant affidavit must set forth particular facts and circumstances underlying
> the existence of probable cause, so as to allow the magistrate to make an
> independent evaluation of the matter.  If an informant's tip is the source of
> information, the affidavit must recite 'some of the underlying circumstances from
> which the informant concluded' that relevant evidence might be discovered, and
> 'some of the underlying circumstances from which the officer concluded that the
> informant, whose identity need not be disclosed, . . . was 'credible' or his
> information 'reliable.'"

*Id*. at 165 (quoting *Aguilar v. Texas*, 378 U.S. 108, 114 (1964)).

 "There is, of course, a presumption of validity with respect to the affidavit supporting

the search warrant."  *Id*. at 171.  "To mandate an evidentiary hearing . . . [t]here must be

allegations of deliberate falsehood or of reckless disregard for the truth . . . ."  *Id*.  If the

defendant establishes the allegation of perjury or reckless disregard by a preponderance of the

evidence, and if the content of the affidavit is insufficient to establish probable cause absent the

false material, the search warrant must be voided and the fruits of the search excluded.  *Id*. at

156.

### ii.  Application

Petitioner's trial attorney filed a pretrial motion to suppress evidence seized during the

raid at 3750 Buena Vista Street.  He argued that the affidavit supporting the search warrant

contained false statements or omissions regarding the residence and the dates of the alleged drug

transactions.  The motion to suppress was accompanied by an affidavit, which defense counsel

drafted and Petitioner signed.  The affidavit stated that Petitioner never resided at 3750 Buena

Vista Street and had no ownership interest in the property.  The judge who adjudicated the

motion granted the motion as to items seized from Petitioner, but denied the motion as to items seized from the house on the ground that Petitioner had not established standing to contest the search of the house.

As previously explained, the trial court determined that defense counsel failed to make substantial challenges to the search warrant affidavit, but the Michigan Court of Appeals was unable to conclude that false material was used to find probable cause.  This Court believes that, even if Petitioner could have established standing to contest the search warrant, his underlying Fourth Amendment claim lacks merit.

The affidavit supporting the warrant stated that the affiant conducted a surveillance at 3750 Buena Vista for approximately thirty minutes on July 2 and 3, 1999, and observed three to four people go into the house, stay a short time, and leave.  The affiant opined that this activity was consistent with trafficking in narcotics.  The affiant stated that a source of information (SOI) known as 1962 assisted undercover officers on over ten occasions in the past and that he was reliable and credible.   SOI 1962 was described as going with an unwitting driver to 3750 Buena Vista, where "Terrance" sold cocaine and kept a quantity of narcotics on hand.  The warrant and affidavit in support described Petitioner's appearance, the residence at 3750 Buena Vista, and a 1999 Blue Chevrolet Corvette associated with Petitioner.

Petitioner has failed to show that this information was false or made with reckless disregard for the truth and that the affidavit was insufficient to establish probable cause absent any false material.  The affidavit was similar to other affidavits used by the same affiant, but this does not lead inevitably to the conclusion that the affidavit contained false information.  Police Officer Conrad Gaines testified at trial that he participated in a surveillance of 3750 Buena Vista

20

two or three days before the search warrant was executed.  On July 3, 1999, he saw Petitioner

arrive at 3750 Buena Vista in a Corvette.  Officer Gaines further testified that he observed

Petitioner exit the car and enter the dwelling.  He twice observed Petitioner come out of the

house, greet a group of people, and take the people into the house.  Both times, the people

returned to their vehicles a short time later and left the area.  Officer Gaines testified that this

activity was consistent with narcotics transactions.  (Tr. Mar. 22, 2000, at 149-53.)

The affidavit also did not lack distinguishing details.  As the Michigan Court of Appeals

explained,

> while there were similarities among the affidavits, there were also significant
> differences.  For example, the affidavit used in this case referred to a different
> source of information than that referred to in the other two affidavits.  Further, the
> affidavit in this case contained an allegation that defendant used a Corvette to
> transport narcotics, an allegation not made in either of the other two affidavits.

*Mallett*, Mich. Ct. App. No. 234406, at 2 n.2.

Petitioner contends that the affidavit lacked independent corroboration.  However, "an

affidavit including a tip from an informant that has been proven to be reliable may support a

finding of probable cause in the absence of any corroboration."  *United States v. Woosley*, 361

F.3d 924, 926-27 (6th Cir. 2004).  Because the affidavit in Petitioner's case stated that the

informant had been reliable and credible in the past, no additional corroboration was necessary.

In addition, the affidavit established a substantial basis for believing that narcotics would be

found in the dwelling.

Petitioner has not demonstrated that the warrant affidavit contained deliberately false

statements or statements made in reckless disregard for the truth and that the affidavit was

insufficient to establish probable cause absent false material.  Therefore, Petitioner's Fourth

21

Amendment claim is not meritorious, and he was not prejudiced by defense counsel's alleged incompetence in litigating the claim.

### b.  Cross-Examination of John Hall

Police Officer John Hall testified on direct examination by the prosecutor that he discovered a small gram scale on the kitchen counter of the house on Buena Vista Street.  He opined that such scales are used to weigh narcotics such as cocaine, heroin, and marijuana for packaging.  On cross-examination, defense counsel asked Officer Hall whether there was any indication that the scale had ever been used for a drug transaction.  Officer Hall answered, "Yeah, there was cocaine or heroin residue on top of the scale."  (Tr. Mar. 22, 2000, at 170-72 and 178-79.)  Petitioner alleges that his attorney should have been better prepared to cross-examine Officer John Hall and that he (defense counsel) would have known about the residue on the scale if he had read Officer Hall's report.

Defense counsel admitted at the evidentiary hearing that he had not read Officer Hall's report and that he was not prepared to cross-examine Hall.  Counsel explained that Officer Hall initially was not an endorsed witness and that he had opposed the late endorsement of Hall.  (Tr. Nov. 17, 2000, at 54-56.)

The Michigan Court of Appeals opined that

the alleged failure to prepare adequately for questioning Officer John Hall was not outcome-determinative because (1) it is clear from a reading of the transcripts that trial counsel extensively cross-examined this witness, and (2) Hall's testimony related to finding drugs and drug paraphernalia in the residence, and defendant did not deny the existence of the drugs but instead alleged that they did not belong to him.

*Mallett*, Mich. Ct. App. No. 234406, at 3.

This Court agrees that the error was not outcome-determinative.  Petitioner's defense was

22

that he was merely attending to the dogs at 3750 Buena Vista Street and that he did not know there were illegal drugs in the house. In addition, he testified that he had not paid attention to the things on the kitchen counter. (Tr. Mar. 23, 2000, at 63.) Defense counsel brought out the fact that gram scales can be purchased at ordinary stores and used for things other than drugs. (Tr. Mar. 22, 2000, at 178.) The Court's confidence in the outcome of the trial is not undermined by defense counsel's cross-examination of Officer Hall.

### c. Not producing Carpenay and Fort

Petitioner alleges that his trial attorney should have argued that the narcotics found at the Buena Vista Street house were planted there. He contends that defense counsel should have required the production of Officers Delford Fort and Derrick Carpenay to establish that fact. Petitioner asserts that his attorney waived the testimony of the two officers without knowing that they were charged with stealing drugs and that Carpenay had pleaded guilty and waived his right not to testify. Petitioner contends that Carpenay could have helped the defense by admitting that he and Fort stole drugs and used the drugs to incriminate people. Petitioner further contends that defense counsel forfeited the right to have a missing-witness jury instruction by not requiring the presence of the officers.

Defense counsel testified at the evidentiary hearing that Petitioner had informed him that he (Petitioner) was present in the house because his cousin asked him to take care of animals in the house. Petitioner claimed to have no knowledge of the drugs or contraband in the house, (Tr. Nov. 17, 2000, at 6), and he never suggested to defense counsel that drugs were planted in the house or that money was stolen. Defense counsel testified that there was no corroboration for the theory that drugs were planted in the house. (Tr. Nov. 21, 2000, at 22-23, 26, and 56.)

23

The Michigan Court of Appeals determined that, even if Delford Fort and Derrick Carpenay could have testified, Petitioner had not shown that their testimony would have substantially benefitted him. This Court agrees. Had defense counsel suggested that drugs were planted in the house on Buena Vista Street, the theory likely would have been countered by Lieutenant Arthur McNamara, who testified that there were no complaints about Officers Fort and Carpenay planting dope. Instead, there were complaints that property or money was missing. Lieutenant McNamara had no reason to believe that evidence introduced at Petitioner's trial was tampered with or altered by Officers Fort or Carpenay. (Tr. Mar. 22, 2000, at 213-14.) The Court concludes that defense counsel's performance was not deficient as a result of forgoing an alternative theory and waiving production of Officers Fort and Carpenay.

### d. Failure to Investigate

Petitioner alleges next that his attorney should have investigated where and with whom he lived to determine whether witnesses existed who could have supported the defense theory. Petitioner claims that, if defense counsel knew he lived with his girlfriend, Kimberly Burrell, he might have used Burrell as a witness to support his defense that he did not live on Buena Vista Street and merely went there to feed the homeowner's dogs.

The trial court determined that defense counsel failed to properly investigate this case, but the Michigan Court of Appeals opined that

> trial counsel's failure to call Kimberly Burrell as a witness was not erroneous under prevailing professional norms because defendant did not suggest to counsel that Burrell had any useful information. Moreover, Burrell's testimony would likely have been cumulative, in large part, to Officer Gaines', because at the *Ginther* hearing Burrell testified that she only heard the dogs but did not see them at the residence in question, and Gaines implied that a dog may have been barking somewhere around the house.

24

*Mallett*, Mich. Ct. App. No. 234406, at 3.

Ineffective assistance occurs when an attorney fails "to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). A failure to investigate key evidence may not be excused if the omission was the result of negligence, not strategy. *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

Kimberly Burrell testified at the evidentiary hearing that Petitioner was living with her on Muirland Street on the day of the raid at 3750 Buena Vista Street. Burwell also testified that, on two occasions she took Petitioner to the house on Buena Vista Street to feed the dogs. Ms. Burrell stated, however, that she never volunteered any information and that she did not discuss the possibility of being a witness with Petitioner even though she took him to two appointments with his attorney. (Tr. Nov. 21, 2000, at 69-71, 74, 78-80, 85-86.) Defense counsel testified at the evidentiary hearing that Petitioner never suggested anyone else would be a beneficial witness. (*Id*. at 5, 20-21.)

The prosecutor did not have to prove that Petitioner lived at the house, only that he had dominion and control over the premises. And although Ms. Burrell might have been able to confirm the presence of dogs at the house on Buena Vista Street, none of the prosecution witnesses disputed that dogs were present there.

Furthermore, if Ms. Burrell had testified, the jury might have concluded that she was lying for Petitioner or that she simply was unaware of what was going on at the house on Buena Vista Street. She testified at the evidentiary hearing that she never saw Petitioner drive a Corvette, but a police officer testified at trial that he observed Petitioner approach the house on

25

Buena Vista Street in a Corvette on July 3, 1999. (Tr. Mar. 22, 2000, at 149-50.) Another officer testified that one of Petitioner's keys fit the Corvette and that Petitioner admitted the car was his. *(Id.* at 208-09.)

For these reasons, there is not a reasonable probability that the result of the trial would have been different if defense counsel had produced Kimberly Burrell as a witness. Therefore, defense counsel's alleged failure to investigate potential witnesses did not prejudice the defense.

### e. Failure to Exclude Evidence

Petitioner says that his attorney should have moved to exclude his criminal record, which included a prior conviction for delivery of less than 50 grams of an illegal substance. Petitioner claims that the conviction was inadmissible under Michigan Rule of Evidence 609 because it was not related to theft, dishonesty, or false statement.

Defense counsel's failure to move to suppress Petitioner's prior conviction did not prejudice the defense, because the prosecutor did not introduce the conviction in evidence. It was Petitioner who volunteered information that he had been arrested previously for a drug offense. And although Petitioner volunteered the information in response to the prosecutor's question about how he knew what the police were going to do, defense counsel testified at the evidentiary hearing that he had no indication Petitioner would say he had been tried as a drug dealer in the past.

Petitioner asserts that defense counsel should have prepared him to testify, but defense counsel testified that he explained to Petitioner his prior conviction would not be admitted unless he brought it in. (Tr. Nov. 21, 2000, at 41.) The Michigan Court of Appeals recognized, that

26

"defense counsel reasonably prepared and informed [Petitioner] about the use of his prior conviction." *Mallett*, Mich. Ct. App. No. 234406, at 4.

### f. Failure to Challenge Prospective Jurors

The testimony in this case came from four police officers and Petitioner, who was the only defense witness. Petitioner contends that his attorney should have used available peremptory challenges to excuse three prospective jurors who had connections to law enforcement officials. The prospective jurors in question included Gary Bero, who had been a state trooper and had worked for a private firm dealing with narcotics and stolen merchandise. He also performed some undercover work for the Drug Enforcement Administration (DEA). (Tr. Mar. 22, 2000, at 38-40.)

Another prospective juror was Ronald Lange, the father of a police officer who formerly worked in the narcotics enforcement division of the Detroit Police Department. Lange admitted that he might have some special knowledge as the result of his son's involvement and that he might compare the facts in this case with what his son said or did. (*Id*. at 38 and 65-66.)

Elizabeth Gabrish was the third prospective juror who had connections with law enforcement officials. She had friends who worked for the Livonia Police Department. She initially stated that she might feel police officers were more credible than other witnesses. (*Id*. at 80-81.)

All three of these prospective jurors deliberated Petitioner's case. Gary Bero was foreman of the jury. (Tr. Mar. 23, 2000, at 128 and 130.)

Petitioner's trial attorney testified at the evidentiary hearing that he discussed Gary Bero, Ronald Lange, and Elizabeth Gabrish with Petitioner and that the two of them jointly decided to

27

retain the jurors.  Defense counsel thought it would be beneficial to have Bero on the jury because Bero would be suspicious of the prosecutor's case due to the indictment of Officers Fort and Carpenay.  He thought that Lange would give them the benefit of the doubt for the same reason and due to his concern with the integrity of the narcotics squad.  Defense counsel pointed out that the three jurors had been questioned thoroughly about whether they could be fair.  He claimed that the questioning and his overall impression of the jurors influenced his decision to keep them.  (Tr. Nov. 17, 2000, at 44-51; Nov. 21, 2000, at 7-17.)

The trial court opined that defense counsel's testimony was "self-serving," because Petitioner had no legal training, no experience in jury selection, and no academic background to help him make educated decisions on whom to retain as a juror.  The trial court stated, however, that it could not second-guess defense counsel's trial strategy and that it could not use counsel's flawed decisions as a basis for a new trial.

The Michigan Court of Appeals agreed that ineffective assistance of counsel could not be predicated on defense counsel's failure to challenge jurors.  The court of appeals further concluded that the failure to challenge the jurors likely did not affect the outcome of the case, because the jurors indicated that they could set aside their biases and be fair to both sides.

This Court agrees that "[c]ounsel . . . is granted deference when conducting *voir dire*." *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004).  Moreover, even if the Court were to assume that defense counsel's failure to strike Bero, Lange, and Gabrish amounted to deficient performance, Petitioner must show that the jurors were actually biased against him in order to establish prejudice from his attorney's failure to strike the three prospective jurors.  *Johnson v. Luoma*, 425 F.3d 318, 328 (6th Cir. 2005) (citing *Hughes v. United States*, 258 F.3d 453, 458

28

(6th Cir. 2001)).  "Actual bias is 'bias in fact' and focuses on the record at voir dire."  *Id*. at 326

(citing *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)).  "When a biased juror is

impaneled . . . , 'prejudice under *Strickland* is presumed, and a new trial is required.'"  *Miller,*

385 F.3d at 672 (quoting *Hughes*, 258 F.3d at 457).  However, "[a] juror's express doubt as to

her own impartiality on *voir dire* does not necessarily entail a finding of actual bias.  The

Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright,

their own impartiality on *voir dire*."  *Hughes*, 257 F.3d at 458.

　　　The three prospective jurors in question made the following comments in response to

additional questions put to them by the trial court and defense counsel.  Gary Bero stated that he

had not worked for the DEA or a police department for four years.  He claimed that he would be

able to set aside his training with the DEA, listen to the facts, and sit as a fair juror.  He also

claimed that he could judge the credibility of police officers like anyone else and not believe the

officers any more or less just because they were police officers.  He maintained that Petitioner

was innocent until proven guilty beyond a reasonable doubt, even if the prosecutor presented a

strong case.  (Tr. Mar. 22, 2000, at 40, 67, and 72.)

　　　Ronald Lange stated that he did not think his son's employment would affect his ability

to listen to the facts.  He professed to be able to judge the police officers' credibility similarly to

the way he judged the credibility of other witnesses, and he claimed that he could put aside the

fact that his son was a police officer.  (*Id*. at 38 and 66-67.)

　　　Elizabeth Gabrish admitted that not all police officers tell the truth and not all police

officers lie.  She said that she thought she could listen to the officers' testimony and judge their

credibility.  She assured the trial court that she could follow the court's instructions, and she

29

thought that she could be fair to both sides.  When asked whether she could find the defendant

not guilty if the prosecutor did not prove each element beyond a reasonable doubt, she answered,

"I'm not sure."  The trial court then asked, "If [the prosecutor] doesn't prove his case, wouldn't

you find the defendant not guilty?"  Ms. Gabrish answered, "Yes.  Excuse me, yes.  I would hope

so, yes."  (*Id*. at 81-82.)

While the prospective jurors' initial responses suggested that they might be biased due to

their associations with law enforcement officials, their subsequent rehabilitation and assurances

of impartiality indicate that they were not actually biased against Petitioner.  Their unequivocal

assurances that they could be fair indicates that they were not actually biased.  Therefore,

defense counsel was not ineffective for retaining Bero, Lange, and Gabrish.

### g.  Failure to Object to Prosecutorial Misconduct

Petitioner says that his attorney should have objected to all the prosecutor's misconduct,

including the prosecutor's questions about Petitioner's prior involvement in a similar situation.

The Court determined above that the prosecutor's comments were either proper or harmless and

that defense counsel was not ineffective for failing to object to the prosecutor's comments.

### h.  Failure to Object to the Use of a Drug Profile Evidence

Petitioner's final allegation about defense counsel is that the attorney should have

objected to Officer Conrad Gaines' testimony that Petitioner's conduct on the day before the raid

was consistent with drug trafficking.  Gaines testified that he twice observed Petitioner exit the

house on Buena Vista Street and meet a group of people getting out of a car.  Gaines saw the

people enter the house with Petitioner and return to their cars a short time later.  Gaines opined

that this behavior was consistent with drug trafficking.  (*Id*. at 149-152.)  Petitioner claims that

Gaines' testimony was improper drug profile evidence.

Officer Gaines had five years of experience in law enforcement, and in Michigan, it is proper for a police officer to provide expert testimony concerning indicia of drug trafficking. *People v. Griffin*, 235 Mich. App. 27, 44-45; 597 N.W.2d 176, 186 (1999). Consequently, the testimony was not improper drug-profile evidence, and defense counsel's failure to object to the testimony did not constitute deficient performance.

### 3. Conclusion on the Ineffectiveness Claims

The Court concludes for all the reasons given above that defense counsel's performance was not deficient or did not prejudice the defense. Therefore, the state appellate court's conclusion that defense counsel was not ineffective did not result in a decision that was contrary to, or an unreasonable application of, *Strickland*.

### IV.  Conclusion

Petitioner's prosecutorial-misconduct claim is procedurally defaulted, and his ineffective-assistance-of-counsel claim lacks merit. Therefore, Petitioner's application for the writ of habeas corpus [Doc. #1, June 25, 2004] is DENIED.

s/ DENISE PAGE HOOD
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Date: October 31, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2006, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager